Case number 18-3083, United States of America v. David Bernier Appellate Mr. Smith for the Appellate, Mr. Smith for the Appellate May it please the Court, my name is Greg Smith and I am the appointed counsel representing David Bernier in this appeal. This case is properly remanded back to the District Court as the government has now even conceded, at least so that the written judgment can be corrected. When you remand it back on that issue, you should also remand it back generally so the other issues we have raised can also be addressed below. Looking at those issues, I want to spend my time on two today. First, you should exercise your supervisory power to announce a rule that other U.S. probation offices cannot refuse to take this Circuit's sentence defendants unless the sentence is changed to add a new special condition that the other... Do we have the jurisdiction to do that? I'm sorry? Do we have the authority to order unnamed probation offices in other districts not to take transfers or to take transfers, excuse me? Your Honor, I believe you do because I believe this is, I recognize that you have a narrower view of supervisory power perhaps than certain others on the Court and I accept the Court, Your Honor's views on that issue that you think supervisory power is quite limited. I think they have to come from somewhere. I don't know where it would come from to give us a supervisory power over other probation offices in the state of Maine or somewhere. Your Honor, I believe this is a place where supervisory power is particularly warranted because it fits squarely into the... Whether it's warranted or not, the question is whether we have it. And I'm not at all sure where we would get it from. Well, Your Honor, I... Do you need to win this argument to win your case here? I'm sorry, Your Honor? Do you need to... I mean, I have the same question Judge Sintel has, but a more fundamental one is why are you making this argument? Do you need us to exercise whatever supervisory authority I have for you to win this case? Your Honor, I believe that the condition never would have been sought. But isn't the question whether the condition is related to the offense? Isn't that the question? Well, that's a separate question and, Your Honor... But why is that a separate question in terms of you succeeding on behalf of your client? Well, if the Court finds that the condition is not related to the underlying offense, then of course it would never reach the issue of whether the probation office improperly sought it. But turning back to Judge Sintel's question, when there are problems in another institution's handling of a sentence, this Court... The district courts in this district can give recommendations to the Bureau of Prisons about what it does in other institutions that are in the district. And this is squarely in what supervisory power calls for. It's judicial administration and uniformity. You may want to move on from that issue, counsel. I'm sorry? You may want to move on from that issue. Okay. Actually, I just want to pause over it. Leaving aside what matter... what supervisory powers we have over a probation office in this district, do we have jurisdiction over the bodies of probation officers in Maine such that we can, from a due process or any other point, such that we can order them to do something? When they are coming to this district act asking for changes, then yes. And that's what happened here. Nobody asked for it. The court didn't. The prosecutor didn't. The request came from the Maine Probation Office. So if the Maine Probation Office has its own policy, we won't take anybody on transfer from another district unless they agree to these requirements. Do we have any authority to order them to take a transferee without those requirements? Your Honor, I think you do because... Is there a case, a statute, anything like that? No, Your Honor. I don't know that the issue has arisen before. But when this court is I understand how we can direct our own district court as to what the supervisory policy is with respect to computers. But can we force another district to take the same to which the person is then transferred? And I understand if they stay within our district, it can be enforced. But if they go to another district, do we have authority to tell the other district you must take the person? That's really the question here. Your Honor, I think that the federal judiciary has an institutional interest in uniformity. And yes, I think you should. I mean, the southern states might have all kinds of restrictions taking place on receipt of prisoners issued that come from other jurisdictions. And I think you should have a receipt of a defendant based on some self-appointed condition that they come up with saying, we're not going to take someone unless our rules, our view of the world should be followed. So yes, I think there's... Federal sentencing needs to be uniform. And the ability of a jurisdiction to refuse to accept the defendant unless changes are made to the Senate should never be accepted by this court or by any court. I don't understand how you get from the hypothesis that there should be uniformity in all things to the conclusion that we have the authority to impose that uniformity. It is the refusal of any jurisdiction to accept this court's prisoners. Yes, I don't think that this court should countenance that. And even if it did, even if it were permitted, there's also the separate issue of the procedure in which this was presented to my client without counsel and at a point in time where he's in limbo. Can he waive counsel? He can waive counsel, Your Honor, but he didn't... Wasn't it there on the form that he signed that he was waiving counsel? Your Honor, that was on the form. Was it not there on the form? It was. But, Your Honor, this is not a real choice. This is a Sophie's choice. If you look in the record, if you read his relationship with his mother, he had to get back to Maine. He had no choice to get back to Maine if he wanted to keep his mother out of a nursing home. That was why he got in the original sentence. There's no question how close he is to his mother. This was the only way she was going to stay out of a nursing home. Nothing in the system caused his mother to need a nursing home. That has nothing to do with whether he waived counsel or not. Well, he waived counsel only because Maine said it would not take him as a policy matter unless he agreed to this new condition. And that wasn't... But he had no right for Maine to take him. Well, if he had... The form in sentencing gives you relief back where you came from, and that's where your supervision is. Now, if you can get another decision to take you, then that's fine. But he had no right to. Well, he never should have been asked the question at all, because I don't think that Maine has the ability to insist on new changes to sentencing before it accepts it. But the form he got says that he's entitled to a hearing on a change. So he wasn't told the only way you can get back to your mother is by signing this form. It says, if they're going to make a condition, I understand the right to have a hearing and to be represented by counsel. So I'm not sure it's Sophie's choice. He could have taken the choice to have a hearing represented by counsel. Your Honor, it's put to him at a point in time where he has no access to anyone. He was never told he had a right to counsel at that point. It's in the form. It's on the form. I understand I have the right to be represented at the hearing by counsel of my own choosing. If I am able to retain, or I may ask the court to appoint counsel for me without any cost, if I can demonstrate I'm unable to pay. Well, Your Honor... I got the right form, though, right? You do. I'm sorry, Your Honor. The issue was he needed to get back home as soon as possible. He was told, unless you sign this form, you will not be released until you get a hearing. It was delaying his release, and therefore he felt a need to get back. He said he wouldn't be released. He could have been released to Washington. He could have been released to Washington, but he couldn't take care of his mother in that circumstance. That's right. Well, how... So his entire goal was to get back to try to keep his mother from being put in a nursing home, and that put him in a... Even the district court said that it depends on your definition of duress. She acknowledged there was pressure being put on him in order to sign the form, and it was presented to him uncounseled with no one present other than himself by a stranger who told him, this is your only ticket home to Maine. When was his first re-contact with Mr. Kirsch? It would have been, my understanding, it's not clear on the record, but he was released in August, and so he didn't get the ability to speak to Mr. Kirsch, I think, until after August. And of course, the way the process works with appointed counsel, Mr. Kirsch was saying, I'm not your counsel anymore. My representation has ended. So he had no one to talk to. He was never told he had a right to a phone call. When did Mr. Kirsch decide he was his counsel? When did Mr. Kirsch decide he wasn't counsel? He was counsel. I assume it was after probation violation discussions began after he had been released in August. So it would have been probably in September sometime, and then he filed a motion to reconsider this condition in October. And the government didn't say it was untimely. They didn't say it was waived. And it was eventually decided by the court in May to keep the condition. Let me just close by saying, because I know I'm over time, there's also a separate issue, an important one, over whether there was ineffective assistance of counsel in his attorney's concession of violations. And I think that the court should also remand for ineffectiveness on that issue. Can I pause over the timeliness question? I know you made the argument that you shouldn't have to appeal conditions until after there's a revocation. But I think the rule is, at least the text of the rule is, that you have to appeal from an order. It's a criminal order. You get 14 days. I'm not really sure about the policy argument you make. It seems like it would not be a very good idea to impose conditions, let the person subject to the conditions decide whether to violate the conditions, and only then challenge. It seems like once you get conditions, you have to follow them. And if you don't want to follow them, you should appeal. Well, Your Honor, first, what was he going to appeal? There was never a hearing held. There was conditions imposed on him. Yes, and it's not even clear when he received notice of that. I thought that was on the second set, not on the first set. Did he not get the first set of notes? He didn't get notice about the first computer restrictions either? It's not clear when he would have gotten that, Your Honor. It was imposed without a hearing, based on the supposed waiver. He did sign the waiver, but he was not present in court, and he had no counsel. So how are you supposed to file a notice of appeal? It's an awful lot to put on a pro se defendant to expect that he knows the rule that he's supposed to appeal in 14 days when he has no counsel at all, no access to counsel. He's in prison alone, and this waiver that he signed then gets imposed on him, and he's supposed to know he's supposed to file a notice of appeal. And how would he know what to appeal? I mean, at that point, what is it that he's going to argue on appeal without counsel to help him understand to raise an issue like that Maine doesn't have the authority to ask for special conditions on the defendants that it accepts for supervision? So I think imposing a notice requirement on an uncounseled defendant reaches too far. Well, it seems to me we have a fact question as to when he was counseled, which if we don't know the answer to, we can't really resolve. Yeah. I think that this case, you can remand for an evaluation of when it was that he actually got notice of the imposition and when he had access to counsel. But he did not have access to counsel for months, is my understanding, after that condition was imposed. So he made an argument that he didn't have notice about the final, the second set of conditions. Did he ever make an argument that he didn't have notice about the first set? Your Honor, the issue of the timeliness of the appeal did not come up until the government raised it in its brief. So it was not raised. No, but with respect to defending the argument that he had violated the first set of conditions, did he ever argue that he didn't know he had those conditions before he violated them? No, Your Honor. And in candor, I cannot say and do not believe that he was unaware of the condition at the time of the alleged violation. So I think by that point he had at least spoken to the probation office and knew that he had those conditions. Under your theory, I mean, the only question, right, is did he have notice of those conditions within the 14 days? Well, 10 days, it was 10 days then, right? Yeah, I don't know. Within a 10-day period. It doesn't make any difference whether he learned about them later, right? The only question is did he know about them within the 10-day window to appeal? Yeah. But I don't, but just like Judge Garland, I don't remember you arguing that he didn't have notice of it. The issue of the timeliness of appeal did not come up until the government's brief. Right. But I don't think there's anything in the record either way on when he received notice that the condition had actually been imposed by Judge Collard. I'm not sure the question is whether he knew within that window, because since it's not a jurisdictional window, your argument about equitable tolling seems reasonable. The question is how much outside the window did he know, and did he then, after he knew, did he appeal? And the first violation was, and I think from trying to put this together from the briefs and what I have in front of me, seems like it's around August 24th. Yes, Your Honor. And he was notified that he had violated. And so if he wasn't claiming that he didn't know about the restriction, then he must have known about the restriction before August 24th. I think he probably knew sometime in September, if not sooner. It would have been probably sometime in August and September. I think that's fair to say that he was aware of the condition at least by August or September. His attorney filed a motion to eliminate the condition in October. The government did not object to that as untimely or as somehow having been waived because of the failure to appeal it prior to that time. And in any event, the final judgment, of course, didn't come until October, and he immediately filed a notice of appeal thereafter. Thank you. Thank you. May it please the Court. Peter Smith on behalf of the United States. Appellant made a number of arguments that start me as being new arguments during his reply, and I think I'll go through them. Starting with the timeliness argument, Appellant argued in his reply that he's entitled to wait until a revocation proceeding to note an appeal, and he hasn't cited any cases supporting that proposition. The government cited a number of cases in its pleadings and latter indicating that a defendant has to appeal within 14 days under Rule 4 of the modification of conditions of supervised release. And Appellant waited more than a year. So in the colloquy that you were just having with opposing counsel, if the first violation is in August of 2017, it was more than a year later until Appellant actually noted an appeal. So he clearly knew about the conditions and he had the argument. Well, what about the argument that the motion, which was filed in October, was essentially the same as an appeal? He was trying to get out from under the conditions, and so they moved in October. And his additional argument that the government didn't complain, too late, you should have appealed, you didn't. Well, the October opposition was still outside of the 14-day window, and Appellant hasn't indicated any basis for it. Well, his argument is he was uncounseled. Well, his pleadings, I mean, I know he's argued that today in court, but his pleadings say that he had counsel. His reply brief says he wasn't, talks about his inability to actually speak with counsel. But that issue would be, one could look at the district court docket and see whether he had counsel at that time. Okay. Well, did you do that? I, no, because. Well, what answer? Did he have counsel? Didn't he sign a waiver which said he understood he could get counsel, but didn't have it? Yeah. He signed a waiver. So why would he sign a waiver if he had counsel? Right. That's the point, isn't it? He obviously didn't have counsel then. Well. When do you think he had counsel? Well, I'm just saying that his pleadings say that he had counsel. When? During, I guess during the summer, during the time period before he filed the opposition, which is also what he said today. He said that counsel, that he obtained counsel during the summer. So, but what's your argument then that, against his argument that, so I understand maybe the clock starts ticking then on some kind of equitable claim. But what about his argument that government didn't object to the motion as a way to resolve this matter? Well, the government didn't file anything. I mean, Appellant's argument at bottom is that the government has sort of waived this argument because it raised it on appeal. But this was the government's first opportunity to make this argument. The government didn't file any pleading in response to Appellant's opposition because the monitoring condition had already been implemented. So there was nothing for the government to do in the district court. It had already obtained the relief that it wanted, which was the monitoring condition. And Appellant, after several months, filed an opposition, and the district court ruled on it. The government never filed anything at that time. So it didn't have the opportunity to make that argument because it didn't file anything. So it made it on appeal, which was its first opportunity to make the timeliness argument. And in any event, I wanted to address some of his other arguments about probation. Appellant has argued that this court should implement a flat rule that other probation offices can't, according to him, attach conditions of supervised release. And we've got a number of different arguments on that. I didn't read his pleadings to actually ask for a flat rule, so I would suggest that's a new argument in his reply. But in any event, we have a number of arguments to make about that. The probation office does have the authority to make recommendations. The government demonstrated that in its pleadings. As a factual matter, Appellant is incorrect that the Maine probation office was implementing some sort of policy. Actually, what happened is that the Maine probation officer visited Appellant's brother's home, which is where Appellant said he was going to live, before Appellant went to Maine and then made the recommendation for the conditions. And that is in the appendix at pages 59 to 60. During the hearing, the probation officer talked about her visits. She met with Appellant's brother. She reviewed the file. That's also in district court document number 39. She did all of those things before making the recommendation. So just as a factual matter, Appellant is incorrect. Appellant hasn't cited any cases saying. So this was before June 19th? Is that what you're saying? June 19th being. 2017, the day he signed the waiver. It might have been after that. Well, but they asked him to sign the waiver on June 19th. So if your argument is they asked him to sign the waiver because of a specific visit, which disclosed a computer, then that recommendation would have had to have come before he signed the waiver. Right. It may have been before. But I wasn't saying that. I wasn't talking about the waiver. I was talking about the recommendation the Maine probation office sent to the District of Columbia to impose computer monitoring. I thought that that that was only in support of. So he was asked to consent to the computer modeling monitoring on June 19th. Right. Correct. So somebody must have said he needed to do that. I assume that was the Maine probation office. It certainly wasn't the District of Columbia probation office. Correct. So. So either that was the result of a Maine policy or, as you're suggesting, the result of a home visit. It suggests the visits occurred before then. And I don't know the answer offhand. The answer would be another probation officer was asked. I think the appendix would say it. And if you look at document number 39 in the district court's docket, it also answers the question as to when this visit occurred. And the answer is? I don't know offhand. I should have asked one of the other people at the desk there to find it before your time runs out. Or could you look at it? Yeah, I'm not sure that I'm. I could file a letter, I guess. That would be the simplest way. I'm not sure I could tell you today or right now. So the computer monitoring condition was actually implemented on June 23rd, a few days after appellants signed the waiver. So that also, I guess, suggests that this home visit occurred before then, before the waiver provision. I guess I had two other points to make about appellants' argument about the flat rule. One is that I agree with Judge Tatel that to the extent there's any question about the imposition of the monitoring condition, that's really a statutory question about whether it's reasonably related. It's not a question about the authority of the probation office, because the probation office does have the authority to make recommendations, and the Maine Probation Office did that. Can a probation office, when somebody is sentenced and given supervisory relief conditions by a federal judge in the District of Columbia, and then they're released from prison, if there are no restrictions on where they can live, is there a restriction on where they can live automatically? Do they have to come back and live in the District unless they're given additional release? The latter is correct. The standard condition, the one that's imposed by the District Court of Sentencing, without any request, there's a list of standard conditions, and one of them is the one that appellant had here, which is that you can't move out of the district without permission of the probation office. And appellant was – that's why appellant had to get permission to go to Maine. And if the district judge here gives permission to move to Maine, can Maine impose different restrictions on the supervised release than the federal district judge imposed here? Probation office. They can't do it on their own, right? No, they can request additional conditions, which the district court can review in its discretion and impose or not and modify the conditions, which is what happened here. But I take you to be suggesting that, for example, appellant would have gone to Maine and the Maine office would say, oh, and we're going to impose additional conditions. No, it wouldn't be able to do that. And they can't say you can't come to Maine unless you agree to our conditions? They can say that. And, again, this is outside of the briefing, because I feel like appellant raised this argument about the rule and about what Maine could or couldn't do for the first time today in argument. So we didn't brief this. But there's a transfer, unless I'm mistaken, I think there's a statute that about – I know that there's – Put that in your letter. Yeah, yeah. It's called courtesy supervision. So somebody is in a district and they want to go to a different district, and the two probation offices talk and one agrees by courtesy to supervise the other person. And I thought there was a statute that governed that, but now I'm starting to think maybe that's not true. So I'll file a letter saying when the home visit was, and I'll answer that question. If the district court here said, no, I'm not going to impose these computer requirements, but you're free to go to Maine and continue to be supervised there, could Maine refuse? If the district court were? Yeah, that's the question. If the district judge here said, no, computer requirements are not justified, I'm going to keep the requirements just as they are, but you're released from having to be in the District of Columbia, you can be in Maine. Can the Maine probation office say, no, we're not going to supervise in Maine? I thought that they could by statute and rule, but I'm not positive. This is what you're going to respond to. Yeah, that's something we're going to have to – But, again, my reason for not knowing that is because this, to me, seemed like a new argument in the reply, making a nationwide rule. I took appellant's pleadings to be arguing that the district court had done something improper by listening to the probation office, not that this court ought to adopt some kind of nationwide rule about what probation offices can and can't do. So the parties didn't address that in their pleadings. Go ahead, David. You have a question? Change subject? Yeah. I want to ask you about one of his ineffective assistance claims, particularly the one where he claims that Mr. Kirsch made concessions during the evidentiary hearing that he didn't approve of. So as I read the transcript, it sounds to me like he did. He, you know, over and over again, he said that the defendant did violate the order, and he was making a mitigation argument. Isn't that right? He did. I think during the course of the hearing, he argued that appellant had made certain technical violations, but they didn't warrant revocation. So why isn't, why don't we have to send that back for the district court to look at, as to whether that was an authorized concession? Sure. I guess for a number of reasons. The defendant says no. But you agree. He did concede that his client had violated the order. He did. So I guess I've got three responses. One is that that isn't tantamount to conceding guilt in the way that McCoy is. McCoy is a trial. It's a capital case. Yeah, but this is conceding. I mean, the consequences of him violating his order are more jail time. Correct. So that, what's your second argument? So, well, and. Try your second one. Sure, sure. That, that McCoy is also inapplicable because of Nixon. That's an argument we made in our brief. And then ultimately, there's no need to remand. You mean because he didn't, he didn't object contemporaneously? Correct. Well, but how do we know that? We don't know that, do we? He says he did. We don't know whether he objected. And isn't that sort of exactly why we remand ineffective assistance claims? Well, I read the, I read McCoy to be saying that. I mean, I take the Court's point. You see my point? I do take your point that he could have whispered to counsel during the hearing or something. Well, in fact, there was a break, right? He took a bathroom break. Right. And, yeah, so we just don't know. Well, I take McCoy to be setting a higher bar. I take McCoy to be saying that the defendant has to make their objection known somehow. I take the majority opinion to be saying that. But even if the Court doesn't Well, that's maybe why you might prevail on a remand in the district court. But we just don't know that, do we? Right. Well, so my yet again backup argument What's your third one? The third argument would be there's no need to remand because it's clear that Appellant wasn't prejudiced. There were 14 violations alleged. The Court found something like 10 violations. There was a great deal of evidence. There's no indication in the record that anything defense counsel would have done would have changed the outcome. He would have been revoked and received the six-month sentence regardless. Well, but except we're talking about conceding liability. I mean, it's a little hard to think But that would still be on the deficiency prong. I mean, he's got to meet both prongs of Strickland. And on the prejudice prong, the government Really, I mean, that's my point. It would seem that conceding liability And he basically says, he says Let me just see, he says He says He says he came in and Ms. Phelps found That he was having a second computer He's not trying to deceive. He got caught, right? Right. I mean, he's saying my guy's guilty. Just go light on him. Yes. It's a little hard to argue that That that might not be There might be some basis for concluding that's not prejudicial. Well, I think that giving Basically, we're saying that there was overwhelming evidence of guilt And that there was nothing defense counsel could have done That would have changed the result. And, you know, the hearing transcripts, something like 100 pages The government presented a bunch of witnesses Documentary evidence There was really a lot of evidence indicating That a felon had violated each of the charged conditions And so the question was just, you know, to defense counsel At the hearing facing that weight of evidence You know, what is defense counsel going to do strategically? And his choice apparently during the hearing was to say, look Sure, the government established some technical violations But revocation isn't warranted And, you know, I'm saying even if you think that that was deficient That the outcome would have been the same Doesn't McCoy say you don't look at prejudice under those circumstances? Yeah. My next question Yeah. If McCoy is applicable Did you argue in your brief that it's not? We did. I think it could be more clear. I think it should have been more clear. And that's my fault. I apologize for that. We did. Did I assume that you weren't challenging that? Yes. That you were accepting that McCoy applied at this stage? And that this was a structural problem? Well, no, we weren't agreeing that McCoy applied And even if McCoy were to apply, McCoy deals with a trial And this is revocation of supervised release So the court in assessing ineffective assistance would still have to I mean, the defendant There would still be the Strickland standard, so Really? I mean, I don't know how a I don't think that's what McCoy means Well, McCoy is a trial error, though It's not ineffective assistance, so Well, let me ask you a related question Suppose I thought that, you know There was enough uncertainty about this issue That a remand was necessary on this The concession question Is there any reason why we shouldn't also remand On the question of whether he knew about the April 2018 additional concessions Conditions Additional conditions Yeah, conditions He says he didn't And I don't know how we can tell from the I mean, the lawyer says Mr. Kersh says I always send him everything, but I have no recollection of this one And he says, well, I never got it And the probation office confirms that he's always said he never got it And what would be Why not just ask the district court to clean up that also Because that's pretty critical, don't you think It can't be found I mean, that would be That would be a pretty serious defect in counsel's representation I think I agree if the court's question is limited to the ineffective assistance claim Because upon also was suggesting there should be a remand on his claim about what the probation office is authorized to do But if Well, set that aside for me Right, your question is about ineffective assistance I'm only talking about ineffective assistance Right Yeah I don't I mean, my answer as to whether a remand is warranted is it isn't for the reasons that we said But if the court's question is, look, we're going to remand it on this one point And why wouldn't you address all of these points I think I agree with that Yeah Okay Okay Okay, thank you Thank you We urge the court to affirm the judgment of the district court Mr. Smith I just want to touch on a couple of things The government says there's no prejudice on the ineffectiveness claim But there was a notebook where And there was a hearing My client talked about questions not asked Documents not introduced Those aren't in the record So I think it would be beneficial to send it back But during the hearing, the lawyer said I looked at all that I made a judgment that these weren't Either relevant or useful What's more to be done here You have the client Lots of times clients give the lawyers 50 arguments And the lawyer picks some of them And in this case, the lawyer said that's what I did Well, the client came totally unprepared to the hearing Didn't have the notebook to introduce I can tell the court it's not in the record There are things that I would want to put in the record If this gets remanded that were not put in below The notebook had some substantial information I think bears on this issue And so we would ask that it be remanded The real argument about remand is that It's one of these circumstances where you're represented by the same lawyer That you're trying to claim is ineffective, right That's the difference That's the problem in how Whether we should count the ineffective assistance hearing That the judge gave as being fine Yeah, I think with him being there And even his own attorney talked about how he felt There was a conflict in being present And essentially testifying against his client So we don't think that that hearing was adequate And we think you should send it back For a more fulsome development of facts On the ineffectiveness issue Particularly on the issue of whether he conceded the points Which was not directly addressed below Next, just quickly The government said that We had not raised this issue until Argument on whether Maine had the authority To refuse to accept the defendant It's right there on page 34 of our original brief Where we talk about how neither Maine Or any other federal probation office Should be able to set their own special preconditions And we ask for the court to exercise its supervisory power In this regard It was directly raised in our original brief It's not a new argument on appeal Finally, just two points The government talked about At pages 59 and 60 How the Maine office said that It made a visit before requesting this to his home Look at the letter The letter doesn't say Based on what we saw in his home We request this condition It says instead Based on Mr. Bernier's conduct In the instant offense Maine is requesting that his condition be modified To include the computer monitoring condition It was not based on any facts they found from the home visit But based purely on the fact That the initial offense itself They felt required that a condition be imposed Mr. Smith, what page was that on? That's pages 59 and 60 of the record Where the probation officer Is talking about her home visit But she says that she's asking For the computer monitoring condition Based on the instant offense Not based on anything she found in the home visit The final point I want to make is that In terms of the waiver issue The opposition that was filed by Mr. Bernier Once he got counsel Did specifically request on page 56 of the record That the court modify the condition To eliminate the computer monitoring condition So the government said We didn't file anything in response Because he wasn't asking for anything We already had what we wanted Well, here was basically a request That the condition be removed The government never objected Never argued that it was untimely in seeking that If the court doesn't have any further questions I'll sit down Thank you for your time Mr. Smith, you accepted this matter On appointment by the court We're grateful for your assistance We'll take the matter under submission We'll take a brief break While the next group of lawyers
judges: Garland, Tatel, Sentelle